## Application of WESCOTT.

(Court of Appeals of District of Columbia. Submitted January 17, 1923. Decided March 5, 1923.)

No. 1558.

Patents ⪯17—Claims for motion pictures having similar simultaneous exposures held patentable.

Claims for a method for producing motion picture transparencies and for the article produced, in which simultaneous exposures of different parts of the same film to several images of the same object field, viewed from the same point through optically alike paths, *held* patentable over the prior art, which the expert testimony showed did not contain the element of optically alike paths, which was essential in that art.

Appeal from the Commissioner of Patents.

Application by William Burton Wescott for a patent. From a decision rejecting six claims of the application, applicant appeals. Reversed.

Odin Roberts, of Boston, Mass., and Arlon V. Cushman, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. This is an appeal from a decision of the Patent Office rejecting six claims of the application; the first three claims being for a method, and the other three for the article produced. Seven claims were considered by the lower tribunals, but the appeal as to claim No. 3 was withdrawn, leaving the six claims here involved. Claims Nos. 1, 2, and 6 are sufficiently illustrative, and are here reproduced:

"1. The art of making motion picture transparencies, comprising the simultaneous exposure of different parts of the same sensitive surface, to a plurality of images of the same object field, viewed from the same point through optically like paths."

"2. The art of making motion picture transparencies having series of groups of pictures of which the members are geometrically similar, comprising simultaneously exposing a plurality of picture spaces separated by a plurality of similar spaces of a sensitive surface to a plurality of images formed by light gathered along a single optical axis, and taking a plurality of optically equivalent paths and thereafter moving the sensitive surface through a plurality of spaces and exposing another similar plurality of picture spaces to a plurality of geometrically like images similarly formed."

"6. A transparency bearing a series of groups each of complementary geometrically like simultaneous photographs separated by a plurality of spaces for members of similar groups."

The application describes a method of making motion picture films by simultaneously exposing a plurality of portions of a film to filtered light rays having a common source. It is contended that the words "viewed from the same point through optically like paths," in the first claim, and the words "each group of pictures representing from the same point of view the same object field at the same time, the pictures being geometrically alike," in the seventh claim, differentiate applicant's conception from the prior art. In the brief for applicant it is stated that the characteristics of the invention "may all be shortly defined by saying that the complementary pictures are geometrically like images of complementary color aspects of the same object field from the same point of view."

The Examiner based his decision largely upon the Bennett patent, issued in France in July of 1913, and in the United States in February of 1917, on an application filed here in April of 1913. Since applicant's filing date was October of 1915, it will be noted that the applications were copending for more than a year. If the position now taken by the Patent Office is correct, an interference should have been declared, so it must be assumed that the Patent Office then was of a different view. Moreover, but for the earlier issuance of a patent in France, this reference could not be considered prior art in any sense. The record contains the affidavits of Louis Kerr, Professor of Physics at the Massachusetts Institute of Technology, and Dr. Comstock, Associate Professor of Physics at the same institution, concerning the Bennett disclosure, and it is needless to suggest that no higher authority could be produced. These gentlemen examined the Bennett application and patent, with special reference to Figures 7 and 8 thereof, and reached the conclusion that the paths of the rays in this patent were not optically alike. As pointed out by Dr. Comstock:

"Both the Wescott and Bennett disclosures relate to motion picture photography, in which there are very definite practical limitations in the matter of choice of lens as to focal length. Those commonly used range in focal length from 1½ to 3 inches. Lenses of 2 inches focal length predominate. For a 3-inch lens the hyperfocal distance for motion picture photography is usually taken as 100 feet. Now, whatever the distance of the background, it is the universal practice, in motion picture portrayal of motion, to have the foreground occupied by the 'center of interest.' So important is that, that frequently part of a more distant scene is rephotographed from a very short distance—from 2 to 5 feet—to obtain the so-called 'close-ups' without which no picture would succeed commercially.

"In Mr. Bennett's proposed arrangement one of the lenses is virtually behind the other by a distance equal to the separation of the pictures. The very distant background appears identical from the point of view of the two lenses, but near objects appear smaller to the more distant lens. * * * It should be noted also, that since the distant background appears the same to both lenses, but more of the background is covered by the near object in the case of one lens than in the case of the other, one lens really sees parts of the background which are behind the near object from the point of view of the other lens. * * *

"Bennett's pictures are therefore not identical, either from the standpoint of geometrical similarity or from the standpoint of the objects photographed. And this failure to be identical is very pronounced, and cannot be rectified by any change in his lenses, since the difficulty is in the relation of near object to background, and any change in his lenses would change the appearance of both object and background."

This was substantially the reasoning and conclusion of Prof. Derr.

The Board of Examiners in Chief were convinced, from a reading of these two affidavits and an independent examination of the Bennett patent, that this was not "a satisfactory reference"; in other words, that there is no provision in the Bennett patent for viewing the object field from the same point through optically like paths. It is not disputed that unless these conditions obtain applicant's method would not be a success; that is, would not be operative.

The decision of the Primary Examiner was based largely upon the Bennett disclosure, which, as we have seen, was rejected by the Board as unsatisfactory. Thereupon the Board examined the British patent to Beck and Bennett, No. 24,159, and Ives patents, Nos. 660,442, 546,-889, 1,238,775, and 1,262,954. The British patent discloses nothing not found in the Bennett patent and, since the Assistant Commissioner does not mention it in his decision, we must assume that its remoteness was satisfactorily demonstrated to him. As to the Ives patents, one of them (No. 546,889) was not even cited by the Examiner, and the applications for two others (Nos. 1,238,775 and 1,262,954), although copending with the application here involved, were not then thought to contain interfering subject-matter, for no interference was declared.

It should be remembered that the present invention relates to a process for making motion picture transparencies, while Ives was concerned with the problem of making pictures in three colors, on a plate or film. Not only is there a total absence in Ives of an intent to reach the result achieved by the present applicant, but his disclosure contains nothing that, in our view, would enable any one entertaining such an intent to achieve that result. The Assistant Commissioner based his decision, as did the Examiner, largely upon the Bennett disclosure, and this, for reasons already given, we think was error. It is apparent from the opinion of the Assistant Commissioner that he was not satisfied to rest his decision solely upon the Bennett disclosure. A reading of the decisions of the three tribunals of the Patent Office reveals that, in this obscure and highly technical art, they have reached a conclusion adverse to the applicant because, in the light of his disclosure, they are of the view that any one skilled in the art could have taken the various references (no one of which is in itself sufficient) and achieved the result reached by him. While a post mortem diagnosis may be valuable, it hardly will be denied that a timely diagnosis, resulting in the saving of life, is of much greater value. There is the same difference in the relative values of an original or real invention and one of the post mortem sort. The one involves the exercise of creative genius or power; the other mere deductions. In re Sorum, 49 App. D. C. 360, 265 Fed. 1000.

We have deemed it unnecessary to enter upon a technical review of the various patents involved, for the reason that, eliminating the principal reference relied upon, the Bennett patent, we are so fully convinced that there is at least a serious doubt as to the correctness of the final rejection as to warrant us in reversing the decision. This will obviate the necessity on the part of applicant of invoking the

jurisdiction of equity, and enable him, if the validity of his patent is challenged, to present the merits of his contentions in a more complete and satisfactory manner than is possible here.

The decision therefore is reversed.

Reversed.